IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARTHA SPINKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 5:15-cv-749-RP |
| | § | |
| ALAMO AREA COUNCIL OF | § | |
| GOVERNMENTS, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Defendant Alamo Area Council of Governments' (AACOG) Motion for Summary Judgment, (Dkt. 40), and Plaintiff Martha Spinks's Motion for Summary Judgment and/or to Strike, Restrict, Exclude or Disallow Evidence Addressed by the 30(b)(6) Deposition Testimony. (Dkt. 39). Having reviewed the record and the applicable law, the Court issues the following order.

## BACKGROUND

Plaintiff is a former employee of Defendant AACOG. She was hired in 2009 to fill the position of program director of the Bexar Area Agency on Aging at a starting salary of $60,000. She asserts that she was told the salary was not negotiable as all program directors started at the same salary. Some time later, however, she learned that a male program director had been hired at a higher salary. When she inquired about the pay discrepancy, her supervisor stated that she recommended the male director receive a higher salary as precedent to raise the salaries of other program directors, including Plaintiff. Plaintiff then spoke with Sherrie Huckabay, AACOG's Human Resources Director, about pursuing a complaint over unequal pay. This conversation bolstered Plaintiff's suspicion that male program directors were paid more.

In December 2013, Plaintiff submitted a request to obtain certain human resources records of each employee, including name, title, grade, date of hire, date of any changes in title or grade, and salary. The information covered each of the years Plaintiff was employed at AACOG and allowed her to investigate whether there were discrepancies in pay or promotion practices. Her investigation revealed that many male program directors started at a higher salary than she did, even though she was told that all program directors started at the same salary. One male director who was hired two months after Plaintiff started at a salary $13,000 higher than Plaintiff's.

A number of changes occurred at AACOG in 2014. In February of that year, the Executive Director and Deputy Executive Director were placed on leave and subsequently terminated following reports from senior directors that they may have been involved in questionable activities concerning the agency's funding. Kevin Wolff, who was AACOG's Chief Financial Officer, became the interim executive director. Shortly thereafter, Wolff held a meeting with all supervisors at which he allegedly encouraged those who were unhappy with the situation at AACOG to resign. Plaintiff asserts that she made comments at the meeting suggesting ways AACOG could be improved, to which Wolff responded that "psychologists would say she was resistant" because she was sitting with her arms crossed. (Pl.'s Mot., Dkt. 39, at 8).

In March, Plaintiff's immediate supervisor, Susan Lodge, left the organization. The reason why she left was not clear to her subordinates, and AACOG executive directors allegedly would not explain her sudden departure. Tim Trevino, who had been a program director hired near the same time as Plaintiff, was thereafter designated Plaintiff's direct supervisor. On April 9, 2014, Trevino conducted Plaintiff's performance evaluation. According to Plaintiff, the evaluation was extremely negative. Whereas previous supervisors rated her performance Highly Effective or Exceptional, Trevino rated her performance Effective, which is the midpoint of the rating scheme. Though not required to provide a narrative, Trevino allegedly went to great lengths to criticize Plaintiff's work.

Plaintiff believes this was the beginning of a paper trail, as she alleges that it was AACOG's policy and practice to make comments only on very high or very low evaluations.

On June 26, 2015, Trevino issued Plaintiff written discipline and placed her on a ninety-day "Performance Improvement Plan." The basis for this discipline was her failure to follow policy in making a presentation to the board of directors. Plaintiff disputes that her presentation was out of compliance with policy. Nonetheless, Trevino allegedly raised no concerns about her performance during the ninety-day monitoring period and closed out the disciplinary plan as satisfactorily completed.

On or around July 11, 2014, Plaintiff filed charges of sex discrimination and Equal Pay Act violations with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights ("TCHR"). She alleged that she was not paid equally for equal work, and that she suffered sex discrimination and retaliation after her complaints. After filing her charges and complaining internally, Plaintiff was terminated on January 12, 2015. Diane Rath, who by that time was Executive Director of AACOG, offered several rationales for the termination in a meeting with Plaintiff and Huckabay. These grounds were reflected in a memo and included unsatisfactory job performance, incompetence, neglect of duty, and insubordination. More specifically, the memo asserted that Plaintiff failed to report fraud and that she belatedly filed certain certificates and reports.

On February 5, 2015, Rath issued a second memorandum detailing new reasons for Plaintiff's termination ahead of an administrative hearing. The memorandum included five violations that AACOG contends were the basis for Plaintiff's termination. The violations are as follows: failure to implement the "Alamo Call a Ride for Vets" program; failure to follow the directive of a supervisor; failure to timely report fraud; failure to file a quarterly performance report; and failure to submit certification forms by the deadline. Plaintiff asserts that these allegations are false and

pretextual. She alleges that her termination was in fact in retaliation for her complaining about unequal pay and filing claims with the EEOC and TCHR. This retaliation, along with her discrimination and unequal pay claims, forms the basis of this lawsuit.

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Wise v. E.I. Dupont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F. 3d at 174.

**DISCUSSION**

**1.      Defendant's Objections to Plaintiff's Summary Judgment Evidence**

Without identifying specific objectionable testimony, Defendant makes a general objection to a swath of Huckabay's affidavit, filed in support of Plaintiff's Response to Defendant's Motion for Summary Judgment. Defendant generally objects that the affidavit includes testimony that is hearsay, speculative, or lacking foundation. The one piece of testimony Defendant identifies is Huckabay's statement that Trevino told her Rath "was a queen bee who hated women,"[1] to which Defendant objects as double hearsay and speculation without foundation.

To the extent Defendant objects to the portions of Huckabay's affidavit reproducing statements of Trevino and Rath—which this Court assumes for want of more specific objections— these statements are non-hearsay under Federal Rule of Evidence 801(d)(2)(D). The Court also assumes the Defendant's remaining objections go to Huckabay's statements concerning her own perception of events in light of the facts detailed in her affidavit. Defendant's objections to this material go to the weight rather than the admissibility of the evidence.

Defendant's objections are overruled.

**2.      Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on Plaintiff's claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001, *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206.

---

[1] The relevant portion of Defendant's brief states "Huckabay quotes, 'Trevino's opinion that "Rath hates all women"['] as double hearsay and speculation without foundation." (Def.'s Reply, Dkt. 48, at 2–3). Defendant's use of quotes suggests that it is pulling language directly from the affidavit. However, the Court has not found this language anywhere in the briefing or evidence. Therefore Court assumes the Defendant was referring to the related language provided above.

### A.     Sex Discrimination

Claims under Title VII are analyzed under the *McDonnell Douglas* framework. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). Under this framework, the employee bears the initial burden of establishing a prima facie case of discrimination. *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015). The employee establishes a prima facie case by showing: (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that she was replaced by someone outside the protected class or that similarly situated employees outside the protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

If the employee makes that showing, the burden shifts to the employer to articulate "a legitimate, nondiscriminatory reason for the challenged employment decision." *Squyres*, 782 F.3d at 231. If the employer does so, the burden shifts back to the employee to show that the reasons offered by the employer were a pretext for discrimination. *Id.* The employee can establish pretext by showing either disparate treatment or that the reasons given were false. *Id.*

A sex discrimination claim under the TCHRA is similar. One distinction is that, under the TCHRA, the employee can rebut an employer's non-discriminatory reason by showing either that the reason given was a pretext *or* that the reason, though true, was only one reason for the adverse employment action in addition to discrimination as a motivating factor. *Id.*

Defendant's first argument concerning Plaintiff's sex discrimination claims is that Plaintiff cannot establish a prima facie case. This is so, Defendant argues, because Plaintiff was not replaced by someone outside the protected class but rather by another female. (Def.'s Mot. Summ. J., Dkt. 40, at 6). Defendant ignores the second way of showing discrimination: disparate treatment. And for good reason—the record contains a fair amount of evidence showing that Plaintiff was treated more harshly than her male peers. As one example only, Defendant insists that Plaintiff was fired in part

for her failure to report fraud, but Plaintiff has produced evidence showing that the male employee who committed the fraud was not terminated. He was instead allowed to retire to "maintain his dignity." (Huckabay Aff. ¶ 11). There is thus a factual dispute concerning whether Plaintiff's male peers were treated more favorably than she was.

Defendant's second argument is that Plaintiff cannot show its proffered non-discriminatory reasons were pretextual. Defendant merely points to the same reasons AACOG gave for Plaintiff's termination and does not explain why they demonstrate an absence of a factual dispute concerning Defendant's motives. Plaintiff has produced her affidavit disputing that Defendants' reasons for terminating her employment were grounded in fact. (Spinks Aff., Dkt. 39-1, ¶¶ 11–56). Some of her claims are corroborated by other evidence. (*See, e.g.*, Huckabay Aff. ¶ 11 (noting that Plaintiff had in fact reported the fraud at issue)). If credited, Plaintiff's testimony would show that Defendants' stated reasons were pretextual.

The evidence in the record thus shows that a factual dispute exists concerning whether Defendant treated male employees more favorably, and whether Defendants' reasons for terminating Plaintiff's employment were pretextual. Accordingly, summary judgment is inappropriate as to Plaintiff's sex discrimination claims.

    **B.**    **Retaliation**

An employer may not retaliate against an employee for bringing a charge of discrimination against the employer. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of unlawful retaliation, a plaintiff must show that: (1) the plaintiff participated in a protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) there is a causal connection between the protected activity and the adverse employment action. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). Retaliation claims brought under TCHRA are substantially similar. *See Navy v. College of the Mainland*, 407 S.W.3d 893, 900 (Tex. App. 2013).

In its Motion, Defendant states conclusorily that "Plaintiff has failed to make out a prima facie case of retaliation and/or in the alternative, that the five (5) reasons proffered by [Rath] are not pretext. Defendant AACOG asserts that it has not retaliated against Plaintiff Spinks, as a matter of law." (Def.'s Mot. Summ. J. 8). Defendant does not thereby carry its burden of "informing the district court of the basis for its motion, *and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact*." *See Celotex*, 477 U.S. at 323 (emphasis added).

Even so, the Court finds that Plaintiff has put forward sufficient evidence to establish a prima facie case. She filed a claim of sex discrimination. (Spinks Aff. ¶ 7). She was fired. (*Id.* ¶ 8). And there is evidence of a causal connection between the adverse employment action and her termination. This includes not only the temporal proximity of the charge and the adverse employment action, but also evidence that Plaintiff's supervisor was "hopping mad" about Plaintiff's filing her charge with the EEOC. (Huckabay Aff. ¶ 5). Other evidence suggests Trevino exhibited a pattern of dismissive or sexist responses to the complaints of female employees. (*Id.* (Trevino stating that a female employee needed to "grow a pair")). Still more evidence suggests that Trevino played a significant role in Rath's ultimately firing Plaintiff. (*Id.* ¶¶ 9–11); *see Zamora*, 798 F.3d at 331.[2]

The Defendant's argument that its five reasons for firing Plaintiff were not pretext is disputed and fails for the reasons stated above. As factual disputes exist concerning Plaintiff's retaliation claims, Defendant is not entitled to summary judgment.

C.     **Equal Pay Act**

To establish a prima facie case under the Equal Pay Act, a plaintiff must show that: (1) her employer is subject to the Equal Pay Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the

---

[2] In *Zamora*, the Fifth Circuit affirmed the viability of cat's-paw analysis in Title VII retaliation claims. Under this theory, Plaintiff's need not show that the final decisionmaker harbored a retaliatory animus. It is sufficient to show that "the person with retaliatory motive somehow influenced the decisionmaker to take the retaliatory action." *Zamora*, 798 F.3d at 331.

8

employee of the opposite sex providing the basis of comparison. *Fields v. Stephen F. Austin State Univ.*, 611 Fed. App'x 830, 831–32 (5th Cir. 2015) (citing *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)).

Defendant argues that "Plaintiff's claims fail under the second and third prongs." (Def.'s Mot. Summ. J. 10). Defendant's assertion concerning the second prong—substantially equal work—goes unadorned in the remaining pages of its Motion. Defendant thus fails to carry its burden of showing that it is entitled to summary judgment on this ground.

Defendant's arguments regarding the third prong—that she was paid less than members of the opposite sex—receives some attention. Defendant points out that there are thirteen program directors at AACOG. Nine of these are women. According to Defendant, some women were paid less than Plaintiff and some were paid more. Defendant also points out that Tim Trevino was hired at the same salary as Plaintiff. Plaintiff, on the other hand, has produced evidence showing that three of the four male directors were paid higher salaries. (Dkt. 42-15). Further, Defendants own representations show that only female directors were paid less than Plaintiff, revealing that the pay range for female directors was less than for males. The Court does not find it dispositive that a single male employee—the one who would become Plaintiff's supervisor—was hired at the same rate as Plaintiff. A contrary position would allow employers to maintain a practice of paying male employees at higher rates so long as one male is paid the same salary as the female employees.

Defendant has failed to carry its burden in showing that it is entitled to summary judgment. Its Motion is therefore denied.

### 3.     Plaintiff's Motion for Summary Judgment or to Exclude Evidence

Plaintiff complains that Defendant did not designate a deponent that was responsive to its deposition notice served under Federal Rule of Civil Procedure 30(b)(6). Plaintiff served a deposition notice on Defendant setting out twenty-six areas of inquiry. Defendant designated

AACOG Executive Director Rath as its Rule 30(b)(6) witness. Defendant did not move this Court for a protective order and Rath's deposition took place on November 1, 2016, by agreement of the parties. Though Rath was the sole deponent designated by AACOG, she was unprepared to testify on a number of topics enumerated in Plaintiff's deposition notice. Plaintiff asserts that Defendant should be precluded from producing evidence on those subjects, and that summary judgment should be entered in Plaintiff's favor.

Rule 30(b)(6) provides a procedure by which a party may depose an organization. Fed. R. Civ. P. 30(b)(6). The party seeking the deposition must serve a notice on the organization describing with reasonable particularity the matters for examination. *Id.* The organization then bears the burden of designating a representative to testify on its behalf, or must alternatively move for a protective order. *Ferko v. NASCAR, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003). A party who receives a 30(b)(6) deposition notice yet fails either to designate a representative or seek a protective order has violated Rule 37(d). *Id.* The information that the designated person must present at the deposition is not limited to matters known by the organization, but also includes information reasonably available to it. *Id.* If the designated witness is not knowledgeable about the relevant facts and the organization does not designate "an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Trust Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993).

There can be no dispute that Rath was unprepared to testify on matters contained in the deposition notice. Defendant appears to justify this by pointing to an email in which Defendant's counsel informed Plaintiff that AACOG would designate additional witnesses if Rath was unable to provide enough information. The Court does find this to be an adequate justification. The burden is on Defendant to produce an "available, knowledgeable, and readily identifiable" witness under Rule 30(b)(6). *Resolution Trust Corp.*, 985 F.2d at 197 (5th Cir. 1993). Defendant could have determined

10

that Rath was unprepared for the deposition simply by asking her. Indeed, that is all it took for Plaintiff to learn that the deposition would be largely fruitless. It is no excuse that Defendant produced an unresponsive witness along with the message: "Try her first. If she doesn't have the info you want, you can try someone else." Defendant's email was not a designation of a knowledgeable and readily identifiable witness, but rather an invitation to a shell game. This is what the streamlining procedures of Rule 30(b)(6) sought to avoid. *See id.*

Defendant's second justification is that the deposition was noticed after the discovery period closed. Under the Local Rules, unopposed discovery may proceed after the discovery deadline set out in this Court's Scheduling Order. Local Court Rule CV-16(d). The Court again notes that the deposition was scheduled by mutual agreement of the parties, and Defendant did not move for a protective order and even represented that further witnesses would be made available after the discovery deadline. Defendant cannot now be heard to complain about Plaintiff's untimeliness.

As a failure to provide a responsive 30(b)(6) witness is a violation of Rule 37(d), sanctions may be warranted. Plaintiff appears to request that a default judgment be entered against Defendant.[3] Though the Court does not find Defendant's offer to produce further witnesses to be an adequate justification for not designating an appropriate 30(b)(6) witness at the outset, Defendant's willingness to provide information nonetheless convinces the Court that a sanction of default judgment is too harsh. The Court is more amenable to barring Defendant from introducing evidence concerning the topics Rath was unprepared to discuss at her deposition. That said, the Court will not make a final resolution of that issue at this time. Instead, the Court will consider

---

[3] Though Plaintiff nominally moves for summary judgment under Rule 56, the Court wonders whether Plaintiff is actually seeking a default judgment under Rule 37(d). Plaintiff's Motion almost exclusively concerns Rath's failure to provide information at her deposition. Even if the Court were to bar Defendant from presenting evidence concerning the subjects on which Rath could not testify, Plaintiff's Motion does not make clear why she would then be entitled to summary judgment. On the other hand, a court may enter a default judgment against a party for its failure to designate an appropriate 30(b)(6) witness, which is at issue here. Fed. R. Civ. P. 37(d)(3).

Plaintiff's future objections to specific evidence Defendant may seek to introduce. Defendant will have the opportunity to show that its failure to provide an adequate 30(b)(6) witness was harmless or substantially justified. Defendant can assist itself on this score by ensuring Plaintiff receives, without further delay, the evidence she would have obtained had Rath been properly prepared for her deposition.

Additionally, the Court notes that the default sanction for a violation of Rule 37(d) is an award of expenses caused by the failure to produce a responsive witness. Fed. R. Civ. P. 37(d)(3). Plaintiff has not yet provided any evidence putting forth its claimed expenses incurred as a result of Defendant's violation. The Court will entertain a supplemental motion for expenses incurred as a result of Defendant's failure to designate a responsive 30(b)(6) witness.

Plaintiff's Motion is DENIED to the extent she seeks summary judgment under Rule 56. Her Motion to Exclude is DENIED without prejudice to raising specific objections to Defendant's evidence at a later time.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment, (Dkt. 40), and **DENIES** Plaintiff's Motion for Summary Judgment and/or to Strike, Restrict, Exclude or Disallow Evidence. (Dkt. 39).

**SIGNED** on December 27, 2016.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE